STATE OF NORTH CAROLINA v. ROBERT JOSEPH DRDAK

No. 107PA91

(Filed 10 January 1992)

1. **Evidence and Witnesses § 2671 (NCI4th) — unconscious driver — blood test at hospital — physician-patient privilege**

Evidence as to a DWI defendant's blood alcohol level was admissible where the blood alcohol level was revealed in a blood test performed while the unconscious defendant was being treated at a hospital, the district attorney filed a motion to compel disclosure of the defendant's medical records, the records were ordered disclosed, and defendant objected but

did not appeal. The Court noted that the physician-patient privilege is entirely a creature of statute and that such information may be disclosed under N.C.G.S. § 8-53 if in the opinion of the trial judge disclosure is necessary to the proper administration of justice.

**Am Jur 2d, Automobiles and Highway Traffic §§ 377, 378.**

**Admissibility in criminal case of blood alcohol test where blood was taken from unconscious driver. 72 ALR3d 375.**

2. **Automobiles and Other Vehicles § 813 (NCI4th)— DWI— unconscious driver—blood test—admissible**

The trial court did not err in denying a DWI defendant's motion to suppress the results of a blood test where the blood for the test was drawn at a hospital while he was unconscious. Other competent evidence of defendant's blood alcohol level is admissible under N.C.G.S. § 20-139.1(a), in addition to that obtained from chemical analysis pursuant to N.C.G.S. § 20-16.2 and N.C.G.S. § 20-139.1. The evidence here meets the requirements necessary to provide a proper foundation for the admission of the blood alcohol test results, and none of defendant's constitutional rights have been violated because his constitutional arguments rest on the flawed contention that the State is limited to evidence of blood alcohol concentration procured in accordance with the procedures of N.C.G.S. § 20-16.2.

**Am Jur 2d, Automobiles and Highway Traffic §§ 375-377.**

3. **Evidence and Witnesses § 2064 (NCI4th)— DWI—witnesses at scene of accident—opinion of impairment**

There was no error in a DWI prosecution concerning testimony from lay witnesses as to whether defendant was impaired by the consumption of alcohol where the court instructed the jury to disregard that testimony.

**Am Jur 2d, Automobiles and Highway Traffic § 376.**

4. **Automobiles and Other Vehicles § 813 (NCI4th)— DWI— cross-examination of officer—blood test requirements**

The trial court did not err in a DWI prosecution involving a blood test by not allowing defendant to cross-examine an officer concerning the requirements of N.C.G.S. § 20-139.1(b) where the court properly determined that the testimony in question was admissible as other competent evidence pursuant

STATE v. DRDAK

[330 N.C. 587 (1992)]

to statute and that the requirements of chemical analysis under N.C.G.S. § 20-139.1(b) were irrelevant to this case.

**Am Jur 2d, Automobiles and Highway Traffic §§ 377, 380.**

ON discretionary review of the decision of the Court of Appeals, 101 N.C. App. 659, 400 S.E.2d 773 (1991), reversing the judgment of *Allen (W. Steven)*, J., entered on 15 November 1989 and ordering a new trial in the Superior Court, FORSYTH County. Heard in the Supreme Court on 16 October 1991.

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*D. Blake Yokley and Donald K. Tisdale for defendant-appellee.*

MARTIN, Justice.

The dispositive issue on this appeal is whether the Court of Appeals erred in reversing the trial court's order denying defendant's motion to suppress the medical records of defendant that showed his blood alcohol level to be 0.178. We hold that the court did so err and, therefore, reverse the decision of the Court of Appeals.

The evidence offered by the State showed that on 14 February 1989 at 5:00 p.m. the defendant, Robert Drdak, met a fellow Federal Bureau of Investigation agent, at Shober's Restaurant in Winston-Salem. They each drank a beer while discussing a case and then made plans to meet for dinner at 7:30 p.m. The defendant arrived for dinner at the fellow agent's home at 7:30 p.m. in a black 1985 Chevrolet Monte Carlo. Between 7:30 and 10:00 p.m., the defendant drank two scotch and waters before dinner, a portion of a glass of wine with dinner and a glass of cognac after dinner. Around 10:00 p.m. the defendant left driving the Monte Carlo in which he had arrived.

That same evening, Terry Austin and John Allgood were meeting with Judith Kay in her home at 360 Staffordshire Road. About 10:05 p.m. they heard a "dull thump" and went outside to investigate. Although it was dark they discovered that a vehicle had struck a tree across the street. Ms. Austin moved her car and shined her headlights toward the passenger side of the wrecked car. She opened the passenger door of the wrecked vehicle and found the defendant unconscious and lying on his right side on

the front seat. Ms. Austin reached in and supported the defendant's head until help arrived about twenty minutes later.

After notifying the police of the crash, Ms. Kay joined Ms. Austin outside to aid the defendant. Both Ms. Austin and Ms. Kay were in close proximity to the defendant, and each noticed a moderate odor of alcohol on his breath.

Scott Emerson, an emergency medical technician employed with Forsyth County Medical Services, responded to Judith Kay's call and arrived at the collision scene at 10:18 p.m. While Mr. Emerson examined the defendant for injuries he detected a moderate odor of alcohol on his breath.

Officer Lichtenhan arrived at the collision scene at about 10:35 p.m. His report indicated that on the night of the collision road conditions were dry, that the road surface was of coarse asphalt with no painted center lines, that there were no tire marks on the surface leading to the defendant's vehicle, that from his recollection there were no restrictions regarding parking on the street, and that the speed limit in that area was 35 miles per hour. Officer Lichtenhan was informed that the defendant had been transported to Forsyth Memorial Hospital by emergency personnel.

Following his investigation at the crash scene, Officer Lichtenhan proceeded to the emergency room of the hospital, arriving around 11:40 p.m. He observed that the defendant was seriously injured and detected a slight odor of alcohol about him. Officer Lichtenhan stated in his report that the defendant had been drinking, but he was unable to form an opinion that the defendant was impaired. He did not order a blood sample to be analyzed for blood alcohol content.

Officer Lichtenhan returned to the hospital on 21 February 1989 to interview the defendant. Mr. Drdak stated that he could not recall the collision, but knew he had not been wearing his seat belt because it was broken.

Dr. Daniel Sayers attended to the defendant upon his arrival at the Forsyth Memorial Hospital emergency room and ordered a routine series of laboratory tests including one for blood ethanol level. Jo Annette Matthews, a phlebotomist employed by Forsyth Memorial Hospital laboratory, received the request that blood samples be taken from the defendant. She drew blood samples from the defendant between 10:50 and 11:00 p.m. using an iodine

STATE v. DRDAK

[330 N.C. 587 (1992)]

prep that contained no ethanol alcohol. She delivered the samples to the appropriate laboratory for testing.

Kathleen Thore, a medical technologist with the Forsyth Memorial Hospital laboratory, analyzed the defendant's blood on 14 February 1989. The defendant's blood alcohol concentration result was 0.178 grams per milliliter of blood. Pursuant to hospital procedure, the results were recorded, and the blood samples were discarded after seven days.

On 22 February 1989, the Winston-Salem Journal reported the blood alcohol content of the defendant's blood. This information was obtained by the newspaper without the district attorney's knowledge or consent. On 1 March 1989 the district attorney filed a motion to compel disclosure of the defendant's medical records.

The following facts were stipulated by the State and counsel for the defendant for the purposes of the defendant's pretrial motion to suppress the laboratory results:

(1) On 21 February 1989 the defendant refused to release any medical records to the police.

(2) Neither Forsyth Memorial Hospital or its agents authorized the release of the defendant's blood tests.

(3) On 22 February 1989, the Winston-Salem Journal reported that "confidential hospital records" in their possession indicated that FBI Agent Robert Drdak was driving while impaired with a blood alcohol content of 0.178 grams per milliliter of blood.

[1] We hold that the evidence as to defendant's blood alcohol level was admissible. On 1 March 1989, the district attorney filed a motion to compel disclosure of defendant's medical records. This motion was heard at a plenary hearing on 9 March 1989, and the records were ordered disclosed to the State. Although defendant objected, he did not appeal this order. Therefore, the evidence as to defendant's blood alcohol level was properly in the possession of the State.

It is to be noted that the physician-patient privilege has no common law predecessor and is entirely a creature of statute. *State v. Martin*, 182 N.C. 846, 109 S.E. 74 (1921). N.C.G.S. § 8-53 sets forth the procedure to compel disclosure of information which ordinarily is protected by the doctor-patient privilege. Such information may be disclosed by order of the court if in the opinion of

the trial judge disclosure is necessary to the proper administration of justice. This decision is one made in the discretion of the trial judge, and the defendant must show an abuse of discretion in order to successfully challenge the ruling. *State v. Barts*, 316 N.C. 666, 343 S.E.2d 828 (1986).

The defendant urges us to hold that disclosure pursuant to N.C.G.S. § 8-53 should only be allowed in more serious cases such as involuntary manslaughter. We reject this invitation and adhere to our previous rulings that it is a matter in the trial judge's discretion whether to allow disclosure pursuant to the statute.

[2]　The Court of Appeals held that the trial judge erred in denying defendant's motion to suppress because the blood test was not performed according to the procedure authorized under N.C.G.S. §§ 20-16.2 and 20-139.1. This contention of the defendant flies squarely in the face of the plain reading of the statute, N.C.G.S. § 20-139.1(a), which states: "This section does not limit the introduction of other competent evidence as to a defendant's alcohol concentration, including other chemical tests." This statute allows other competent evidence of a defendant's blood alcohol level in addition to that obtained from chemical analysis pursuant to N.C.G.S. §§ 20-16.2 and 20-139.1.

For the results of the blood test in the present case to be admissible, the State must produce evidence as to a proper foundation to sustain its admissibility. The State showed that the hospital's blood alcohol test was performed less than an hour after the defendant's car crashed into the tree, that an experienced phlebotomist withdrew the blood sample under routine procedure pursuant to the doctor's orders, and that a trained laboratory technician analyzed the blood sample using a Dupont Automatic Clinical Analyzer which was capable of testing either whole blood or serum. The result was 0.178 grams per milliliter of blood. The result was recorded and relayed to the attending physician by computer screen in order to assist him in his determination of appropriate treatment of the defendant. The results of the test were made a part of the medical records of the hospital in the defendant's case. This evidence meets the requirements necessary to provide a proper foundation for the admission of the blood alcohol test results. *Robinson v. Ins. Co.*, 255 N.C. 669, 122 S.E.2d 801 (1961). This Court has held such results admissible in other cases prior to the adoption of the implied consent statute. *E.g., State v. Collins*, 247 N.C. 244, 100 S.E.2d

489 (1957); *State v. Moore*, 245 N.C. 158, 95 S.E.2d 548 (1956); *State v. Willard*, 241 N.C. 259, 84 S.E.2d 899 (1954).

The language allowing "other competent evidence" as to a suspect's blood alcohol level has been in the statute since it was first enacted and is a part of the amended statute which will take effect 1 January 1993.

The Court of Appeals relied upon *State v. Bailey*, 76 N.C. App. 610, 334 S.E.2d 266 (1985), for the proposition that the State must meet the requirements of N.C.G.S. § 20-139.1 prior to the admission of any blood alcohol test results. In *Bailey* the hospital refused to withdraw blood at the request of a law enforcement officer. The officer obtained a search warrant and seized a blood sample from the hospital. It is arguable whether *Bailey* addresses the issue upon which the Court of Appeals relied in its opinion in the present case. Insofar as *Bailey* is inconsistent with the opinion of this Court, it is overruled. We hold that the evidence was properly admitted by the trial judge.

The defendant brings forward several issues that were argued before the Court of Appeals, but were not discussed by that court. We find no merit in any of these arguments. Defendant argues that the admission of this evidence violated his due process rights under the United States Constitution and under article I, sections 19 and 23 of the North Carolina Constitution. First, the defendant argues that he was denied his physician-patient privilege. This argument has been resolved adversely to the defendant as set forth above. Second, by using the results of the blood alcohol test by the hospital, the State has avoided the necessity of a finding of probable cause by the arresting officer before a chemical test can be ordered as required by N.C.G.S. § 20-16.2(a). As discussed above, it is the holding of this Court that the obtaining of the blood alcohol test results in this case was not controlled by N.C.G.S. § 20-16.2(a) and did not have to comply with that statute because the test in question is "other competent evidence" as allowed by N.C.G.S. § 20-139.1. Third, the defendant argues that the destruction of the blood sample by the hospital prior to his arrest violated his right of confrontation under article I, section 23 of the North Carolina Constitution. The blood sample was not destroyed by the State, but by the hospital in the regular course of its hospital procedures. The State cannot be held responsible for the actions of the hospital in this respect. Unless a defendant can show bad

faith on the part of the police, failure to preserve potentially useful evidence by the State does not constitute a denial of due process. *See Arizona v. Youngblood,* 488 U.S. 51, 102 L. Ed. 2d 281 (1988). The defendant has failed to show any such bad faith on the part of the State or police in this case.

Basically, the defendant's constitutional arguments must fail because of defendant's flawed contention that the State is limited to evidence of blood alcohol concentration which was procured in accordance with the procedures of N.C.G.S. § 20-16.2. This defective argument results from the failure of the defendant to recognize the "other competent evidence" clause provided in N.C.G.S. § 20-139.1(a). We hold that none of the constitutional rights of the defendant have been violated.

[3] Next, the defendant argues that testimony by lay witnesses as to their opinion concerning whether the defendant was impaired by the consumption of alcohol when observed by the witnesses at the scene of the collision was improperly admitted. However, our review of the transcript indicates that no such opinion testimony was admitted. The testimony of Judith Kay regarding her opinion that the defendant was drunk was stricken from the record, and the court instructed the jurors that they should not consider that testimony. The same is true as to the testimony of Scott Emerson. Further the testimony of Judith Kay, "looks like you have a DWI on your hands," was stricken by the trial judge, and the jury was instructed to disregard that testimony. When a court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured. *State v. Smith,* 301 N.C. 695, 272 S.E.2d 852 (1972). We find no merit in these arguments by the defendant.

[4] Finally, the defendant argues that the trial judge should have allowed him to cross-examine the police officer concerning the requirements of N.C.G.S. § 20-139.1(b). In this respect, the defendant was attempting to get before the jury that the hospital lab blood test did not meet the requirements of N.C.G.S. § 20-139.1(b). The trial judge properly determined that the requirements of chemical analysis under N.C.G.S. § 20-139.1(b) were irrelevant to this case. This is so because the testimony in question in this case was admissible as "other competent evidence" pursuant to the statute. There is no merit to this assignment of error.

In conclusion, it is the holding of this Court that the hospital's evidence of the defendant's blood alcohol concentration was admissible in this case. This evidence was admissible under the "other competent evidence" exception contained in N.C.G.S. § 20-139.1, and it is not necessary for the admission of such "other competent evidence" that it be obtained in accordance with N.C.G.S. § 20-16.2. The decision of the Court of Appeals is

Reversed.