STATE OF NORTH CAROLINA v. SAMUEL B. DAVIS, JR.

No. COA99-1429

(Filed 6 February 2001)

**1. Motor Vehicles— driving while impaired—testing of blood and urine—implied consent—search warrant after defendant's refusal**

The trial court did not err in a driving while impaired case by concluding that defendant's due process rights were not violated under the implied consent statute of N.C.G.S. § 20-16.2 by the testing of his blood and urine pursuant to a search warrant after

---

defendant's refusal to be tested, because: (1) blood and urine tests are not testimonial or communicative evidence within the privilege against self-incrimination; (2) testing pursuant to a search warrant is a type of "other competent evidence" referred to in N.C.G.S. § 20-139.1; and (3) defendant's belief that his right to refuse to take the test was absolute is not relevant.

**2. Motor Vehicles— driving while impaired—instruction on defendant's refusal to be tested—no prejudicial error**

Even if it were error to instruct the jury in a driving while impaired case that it could consider defendant's refusal to be tested as evidence of defendant's guilt, it was not prejudicial error because three officers testified that defendant smelled of alcohol, defendant failed three sobriety tests, defendant slurred his words and had glassy eyes, defendant fell in and out of sleep while under arrest, and tests revealed the presence of alcohol and other impairing substances in defendant's blood and urine.

**3. Motor Vehicles— blood alcohol concentration—extrapolation—Daubert—scientific foundation**

The trial court did not abuse its discretion in a driving while impaired case by finding that the foundation for an expert's extrapolation testimony regarding defendant's blood alcohol concentration at the time of an accident was sufficient to meet the Daubert standard, because: (1) North Carolina courts have accepted extrapolation evidence since 1985; (2) other states have recognized the reliability of extrapolation evidence; (3) the expert stated his basis of understanding came from a large number of studies; and (4) defendant did not object to the expert's qualifications.

**4. Motor Vehicles— driving while impaired—test refusal—use of other procedures—explanation to defendant**

If a defendant refuses to be tested pursuant to N.C.G.S. § 20-16.2(a)(1) and the officer elects to pursue "testing pursuant to other applicable procedures of law," this should be explained to the defendant in order that he may make a final decision on whether to be tested, and only if he then refuses should he be reported as having willfully refused to be tested. (Concurring opinion of Judge Walker joined by Judge Hunter)

Judge WALKER concurring.

Judge HUNTER joins in concurring opinion.

STATE v. DAVIS

[142 N.C. App. 81 (2001)]

Appeal by defendant from judgment entered 9 June 1999 by Judge Henry E. Frye, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 6 November 2000.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Issac T. Avery, III, for the State.*

*White and Crumpler, by Dudley A. Witt, for the defendant-appellant.*

EAGLES, Chief Judge.

Defendant was indicted and tried on charges of driving while impaired, running a red light and assault with a deadly weapon inflicting serious injury. Defendant was convicted of driving while impaired and running a red light. Judge Frye sentenced defendant to an active sentence of twelve months incarceration and a $700.00 fine.

The evidence tended to show the following. On 15 October 1998 at approximately 11 a.m. defendant drove through a red light striking the victim's vehicle. Defendant continued through the intersection, stopped his vehicle and walked back to the victim's vehicle. Winston-Salem Police Officer David Walsh arrived on the scene and reported that defendant's eyes were "bloodshot and watery" and that defendant's speech was "slurred and slow." Officer Walsh further testified that defendant had a "moderate odor" of alcohol. Officer Walsh administered three field sobriety tests, all of which the defendant failed. The defendant confessed to Officer Walsh that the defendant had taken a drug called "Trilog." Officer Walsh determined that the defendant had consumed a sufficient amount of an impairing substance so as to appreciably impair his mental and physical capacities. Officer Walsh placed defendant under arrest and transported him to the Forsyth Medical Center for a blood test. At the hospital, Crime Scene Technician Frady advised the defendant of his rights under North Carolina's implied consent statute, and the defendant refused the blood test. Officer Frady testified that the defendant's speech was "slurred" and "labored," and that the defendant seemed sleepy. Officer Walsh then left defendant in the custody of Officer Hayes while he went to get a search warrant. Officer Hayes testified that while waiting for the warrant the defendant fell asleep and seemed to be appreciably impaired. The magistrate issued the search warrant based on probable cause and the defendant submitted to testing of his blood and urine. The blood and urine samples were collected approximately three and one-half hours after the collision.

**STATE v. DAVIS**

[142 N.C. App. 81 (2001)]

Dr. Andrew Mason analyzed the samples and testified that defendant tested positive for a significant amount of Alprazolam, (brand name Xanax), and the presence of Diazepam (brand name Valium). The blood tests also revealed a blood alcohol concentration of 0.013. The urine tests confirmed the results. Dr. Mason testified that each of these three substances, Alprazolam, Diazepam and alcohol, increase impairment levels.

On 20 April 1999 the defendant moved to suppress the results from the blood and urine tests on the basis that he was told he had a right to refuse the test and that the test was given in spite of his refusal. The defendant argued that the compelled production of his bodily fluids was in violation of fundamental fairness and the Due Process Clause of the Fifth Amendment to the United States Constitution. On 20 August 1999, the trial court denied the motion to dismiss. The court held that North Carolina's implied consent statute permits a defendant the opportunity to submit voluntarily to testing or refuse, but that a refusal "does not preclude testing pursuant to other applicable procedures of law." N.C.G.S. § 20-16.2(c). The court held that testing blood and urine pursuant to a valid search warrant is an "applicable procedure of law." *Id.*

At trial defendant's blood and urine test results were admitted over his objections. Dr. Andrew Mason, over defendant's objections, extrapolated the blood alcohol concentration for the jury, testifying that the defendant's blood alcohol concentration at the time of the accident was in the range of 0.066-0.076. Further the trial court instructed the jury in accordance with N.C.G.S. § 20-139.1(f) that it could consider the evidence that the defendant refused to voluntarily submit to testing. Defendant appeals.

I. Right To Refuse

[1] Defendant first assigns as a violation of his due process rights the testing of his blood and urine. Defendant argues that the testing violated his due process rights for two reasons. First, since the officer represented that defendant had a right to refuse to be tested, and the defendant exercised that right, it is a violation of due process to test his blood after his refusal. Second, the General Assembly has outlined the procedures for testing blood and urine and in this case, the officers exceeded their statutory authority.

This court has held that misrepresentation by a police officer resulting in detrimental reliance by the defendant is a due process

violation which is cured by the suppression of the resulting statements. *State v. Sturgill*, 121 N.C. App. 629, 469 S.E.2d 557 (1996). Defendant argues that because he relied on the misrepresentation that he had an absolute right to refuse, for the State to take his blood and urine violated his due process rights. However, *Sturgill* is not relevant here. *Sturgill* addresses whether incriminatory statements made by the defendant pursuant to an officer's promise were made knowingly and voluntarily. In *Sturgill*, the defendant made self-incriminating **statements** regarding details of five separate break-ins as a result of the officer's promise not to prosecute him as a habitual felon. *Id.* The U.S. Supreme Court has held that blood and urine tests are not testimonial or communicative evidence within the privilege against self-incrimination. *South Dakota v. Neville*, 459 U.S. 553, 74 L. Ed. 2d 748 (1983). Accordingly, we hold that reliance on *Sturgill* is misplaced.

Our General Assembly enacted two statutes in North Carolina which are dispositive here. The first is the implied consent to chemical analysis statute. N.C.G.S. § 20-16.2 (effective until July 1, 2000). Relevant portions are as follows:

> Any person who drives a vehicle on a highway or public vehicular area thereby gives consent to a chemical analysis if charged with an implied-consent offense. The charging officer shall designate the type of chemical analysis to be administered, and it may be administered when the officer has reasonable grounds to believe that the person charged has committed the implied-consent offense.

*Id.* The second involves the procedures governing the chemical analysis:

> (a) Chemical Analysis Admissible.—In any implied-consent offense under G.S. § 20-16.2, a person's alcohol concentration or the presence of any other impairing substance in the person's body as shown by a chemical analysis is admissible in evidence. This section does not limit the introduction of other competent evidence as to a person's alcohol concentration or results of other tests showing the presence of an impairing substance, including other chemical tests.

N.C.G.S. § 20-139.1 (emphasis added). Here the defendant was given the opportunity to voluntarily submit to the testing. He refused, and the officer obtained a search warrant based on probable cause. We

STATE v. DAVIS

[142 N.C. App. 81 (2001)]

hold that testing pursuant to a search warrant is a type of "other competent evidence" referred to in N.C.G.S. § 20-139.1. In a similar case our Supreme Court approved the use of a subpoena to obtain "other competent evidence." *State v. Drdak*, 330 N.C. 587, 411 S.E.2d 604 (1992). In *Drdak*, blood was taken from the defendant in order to render medical assistance. *Id.* Later, the prosecution obtained the results under subpoena. The court held:

> Basically, the defendant's constitutional arguments must fail because of defendant's flawed contention that the State is limited to evidence of blood alcohol concentration which was procured in accordance with the procedures of N.C.G.S. § 20-16.2. This defective argument results from the failure of the defendant to recognize the "other competent evidence" clause provided in N.C.G.S. § 20-139.1(a). We hold that none of the constitutional rights of the defendant have been violated.
>
> . . . .
>
> In conclusion, it is the holding of this Court that the hospital's evidence of the defendant's blood alcohol concentration was admissible in this case. This evidence was admissible under the "other competent evidence" exception contained in N.C.G.S. § 20-139.1, and it is not necessary for the admission of such "other competent evidence" that it be obtained in accordance with N.C.G.S. § 20-16.2.

*Drdak*, 330 N.C. at 594-95, 411 S.E.2d at 608-09 (1992). Here, the evidence obtained complied with both N.C.G.S. § 20-16.2 and *Drdak*. The defendant was first given an opportunity to consent. The defendant was advised of his rights orally and in writing. The defendant called a witness pursuant to N.C.G.S. § 20-16.2. Then the defendant refused to take the test. At that point, Officer Walsh took steps to obtain the evidence by other lawful methods. Based on probable cause, Officer Walsh went before a judicial official and obtained a search warrant, served it on the defendant and was then able to have the defendant tested. Our Supreme Court has held that blood tests obtained through other lawful means are admissible under N.C.G.S. § 20-139.1.

That the defendant believed that his right to refuse to take the test was absolute is not relevant. The United States Supreme Court held that it is lawful to obtain blood tests from unconscious defendants without their express consent. *Breithaupt v. Abram*, 352 U.S. 432, 1 L. Ed. 2d 448 (1957). Further, the court noted that alcohol and

**STATE v. DAVIS**

[142 N.C. App. 81 (2001)]

other drugs are eliminated from the blood stream in a constant rate, creating an exigency with regard to obtaining samples thereby relieving the officers of the need to obtain search warrants. *Schmerber v. California,* 384 U.S. 757, 770, 16 L. Ed. 2d 908, 920 (1966). The Fourth Circuit, in *U.S. vs. Reid,* 929 F.2d 990 (4th Cir. 1991), held:

> Time is of the essence when testing for alcohol in the bloodstream. The combination of these factors sets out exigent circumstances which are sufficient to require that the police be allowed to test drunk drivers without first having to obtain a warrant.

*Id.* at 994. In *Reid,* the court was determining whether two women convicted of DUI in Virginia based on their breathalyzer results, were subject to an improper search since no warrant was obtained. The court relied on *Schmerber* in holding that the rapid destruction of evidence due to bodily processes creates an exigency excusing the warrant requirement. *Id.*

In a similar DUI case, the U.S. Supreme Court held that there was no violation of due process to test the blood of someone reasonably believed to be appreciably impaired. *Breithaupt,* 352 U.S. at 436, 1 L. Ed. 2d at 451. The U.S. Supreme Court held:

> Furthermore, due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of "decency and fairness" that has been woven by common experience into the fabric of acceptable conduct. It is on this bedrock that this Court has established the concept of due process. The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors.

*Id.* Here, the officers obtained a valid search warrant prior to obtaining blood and urine samples from defendant.

The defendant's rights under N.C.G.S. § 20-16.2 were not violated because the General Assembly does not limit the admissibility of competent evidence lawfully obtained. Law enforcement officers acted pursuant to § 20-16.2 and § 20-139(f) and were within their authority.

II. Refusal as Evidence of Guilt

Defendant's second assignment of error is that since defendant had no meaningful right to refuse to be tested, the evidence of his refusal should not be admitted at trial. We disagree. N.C.G.S. § 20-16.2 clearly requires that a defendant be offered the right to refuse and if he refuses, evidence of the refusal is admissible against him. The statute does not require notice to the defendant that testing may be sought via search warrant. *Id.* On occasion refusal may end the inquiry. An officer must have probable cause to obtain a search warrant for testing without consent.

The U.S. Supreme Court in *South Dakota v. Neville* held that there is no violation of fundamental fairness in using the defendant's refusal to be tested as evidence of guilt, even though he was not warned that the refusal was admissible against him. *Id.* at 566, 74 L. Ed. 2d at 759. In *Neville* the defendant was arrested by officers for driving while intoxicated and asked to submit to a blood-alcohol test. Pursuant to South Dakota statute (S.D.Comp.Laws Ann. § 32-12-111) defendant was warned that he could lose his licence to drive if he refused to be tested. *Id.* The officers failed to warn him that in addition to losing his license, the evidence of the defendant's refusal to be tested could be admitted against him pursuant to S.D.Comp.Laws Ann. § 33-23-10.1. *Id.* at 565-66, 74 L. Ed. 2d at 760. The court held:

> While the State did not actually warn respondent that the test results could be used against him we hold that such a failure to warn was not the sort of implicit promise to forego use of evidence that would unfairly "trick" respondent if the evidence were later offered against him at trial. We therefore conclude that the use of evidence of refusal after these warnings comported with the fundamental fairness required by Due Process.

*Id.* at 566, 74 L. Ed. 2d at 760. Our Supreme Court has held that although deceptive methods and false statements made by police officers are not commendable practices, standing alone they do not render a confession inadmissible. *State v. Jackson*, 308 N.C. 549, 574, 304 S. Ed. 2d 134, 148 (1983). In the instant case, whether the police officer intended to seek a search warrant even if the defendant refused the test is not relevant. The officer's conduct was permitted by statute; the officer warned the defendant that he could lose his license and that his refusal could be used as evidence of guilt. Although deception by police officers is not favored by this Court, on

this record the failure to warn the defendant that the officer could seek alternate methods of testing does not render defendant's refusal inadmissible.

**[2]** Even if it were error to instruct the jury that it could consider the refusal as evidence of the defendant's guilt, on this record it would not be prejudicial. Here three officers testified that the defendant smelled of alcohol, failed three field sobriety tests, slurred his words, had glassy eyes, and while under arrest fell in and out of sleep. Tests revealed the presence of alcohol and other impairing substances in his blood and urine. Clearly there was sufficient evidence for a jury to find that the defendant was appreciably impaired and thus guilty of driving under the influence. In *State v. Livingston*, 22 N.C. App. 346, 206 S.E.2d 376 (1974), we held that evidence that the defendant smelled of alcohol, his face was "real red," his eyes were "bloodshot," and when he walked the defendant tended to sway, combined with faulty driving is sufficient prima facie to show a violation of N.C.G.S. § 20-138.1. *Id.* at 348, 206 S.E.2d at 377. In *Livingston*, the court held that evidence was sufficient for a jury to find that the defendant was appreciably impaired. *Id.*

"Prejudicial error is shown when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (1988); *State v. Harris*, 136 N.C. App. 611, 614, 525 S.E. 2d 208, 210 (2000). We hold that on this record, there is no reasonable probability that a different result would have been reached.

III. Extrapolation by Expert

The defendant objected to the expert testimony of toxicologist Dr. Andrew Mason on two grounds: (1) that the underlying basis of his opinion was derived from analyzing evidence obtained in violation of the defendant's constitutional rights thereby rendering any opinion testimony based on this evidence incompetent; and (2) that the State failed to provide an appropriate foundation for this testimony. Since we have held that there was no violation of the defendant's constitutional rights in obtaining the evidence analyzed, we need not further address defendant's first argument.

**[3]** Defendant's second basis for objection is that the foundation for Dr. Mason's testimony was not sufficient to meet the standard of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

143 L. Ed. 2d 238 (1999). The defendant argues that only one *Daubert* factor was addressed by the State in laying the foundation for the expert's testimony and that the court abused its discretion in admitting the testimony relying on an insufficient foundation. Both *Daubert* and *Kumho* discuss the need for the "reliability" factors to be flexible. The court noted that without discretionary authority trial courts would be unable to avoid "reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho*, 526 U.S. at 152, 143 L. Ed. 2d at 253. We have accepted the reliability of extrapolation evidence since 1985. *State v. Catoe*, 78 N.C. App. 167, 336 S.E.2d 691 (1985). The court noted that other states have recognized the reliability of extrapolation evidence. *Id.* Dr. Mason testified that his basis of understanding came from a "large number of studies." Defendant did not object to Dr. Mason's qualifications. There being no abuse of discretion on this record, this assignment of error is overruled.

In conclusion, we hold that the law enforcement officers acted properly when informing the defendant of his rights under our implied consent statute. We hold that the officers acted properly by obtaining a valid search warrant to take blood and urine samples after the defendant exercised his right to refuse under the implied consent statute. We further hold that on this record, it was not error to instruct the jury that they could consider the defendant's refusal to submit to testing. Finally we hold that the expert extrapolation testimony is admissible.

No error.

Judge WALKER concurs with separate concurring opinion.

Judge HUNTER concurs and joins in Judge WALKER'S concurring opinion.

Judge WALKER concurring.

[4] On the issue of defendant's refusal to be tested, I agree with the majority opinion where it concludes:

Even if it were error to instruct the jury that it could consider the refusal as evidence of the defendant's guilt, on this record it

**KNOTTS v. CITY OF SANFORD**

[142 N.C. App. 91 (2001)]

would not be prejudicial. Here three officers testified that the defendant smelled of alcohol, failed three field sobriety tests, slurred his words, had glassy eyes, and while under arrest fell in and out of sleep. Tests revealed the presence of alcohol and other impairing substances in his blood and urine. Clearly there was sufficient evidence for a jury to find that the defendant was appreciably impaired and thus guilty of driving under the influence.

However, I write separately to express my concern about the procedures followed here. A defendant may decline to be tested pursuant to N.C. Gen. Stat. § 20-16.2(a)(1). If he refuses and the officer elects to pursue "testing pursuant to other applicable procedures of law," this should be explained to the defendant in order that he may make a final decision on whether to submit to being tested. Only if he then refuses should he be reported as having "willfully refused" to be tested.

In any event, in my opinion, N.C. Gen. Stat. § 20-16.2 and § 20-139.1 need remedial legislative action to clarify under what circumstance a defendant is deemed to have "willfully refused" to be tested such that he is subjected to the additional penalties of N.C. Gen. Stat. § 20-16.2(d).