NO. COA14-7

NORTH CAROLINA COURT OF APPEALS

Filed:  2 September 2014

JEROME BREWER, SABRINA BREWER,
and MATTHEW J. BREWER, by and
through his Guardian *Ad Litem*,
Timothy T. Leach,

    Plaintiffs

    v.                                      Gaston County
                                             No. 11-CVS-1437
WILLIAM D. HUNTER, M.D.,
NEUROSCIENCE & SPINE CENTER OF
THE CAROLINAS, P.A., and
NEUROSCIENCE & SPINE CENTER OF
THE CAROLINAS, L.L.P.

    Defendants


Appeal by defendants from order entered 15 August 2013 by Judge F. Donald Bridges in Gaston County Superior Court.  Heard in the Court of Appeals 8 May 2014.

> *Law Office of Thomas D. Bumgardner, PLLC, by Thomas D. Bumgardner, and The Eisen Law Firm Co., L.P.A., by Brian N. Eisen, pro hac vice, for plaintiffs-appellees.*

> *Lincoln Derr, PLLC, by Sara R. Lincoln and Scott S. Addison, for defendants-appellants.*


DAVIS, Judge.


William D. Hunter, M.D. ("Dr. Hunter"), Neuroscience & Spine Center of the Carolinas, P.A., and Neuroscience & Spine

Center of the Carolinas, L.L.P. (collectively "Defendants") appeal from an order granting in part the motion of Jerome Brewer, Sabrina Brewer, Matthew Brewer, and Timothy T. Leach, the guardian *ad litem* of Matthew Brewer, (collectively "Plaintiffs") to compel discovery in this medical malpractice action. On appeal, Defendants contend that the trial court erred in requiring them to produce various medical records regarding certain former patients of Dr. Hunter who are not parties to this lawsuit. After careful review, we conclude that the trial court's order should be affirmed.

## Factual Background

In 1998, Jerome Brewer ("Mr. Brewer") underwent thoracic spinal surgery for treatment of spinal stenosis, back pain, and bilateral leg weakness. In 2007, Mr. Brewer was seen by his primary care physician for treatment of back pain and leg weakness, symptoms similar to those that led to his surgery in 1998.

On 28 January 2008, Mr. Brewer was referred to Dr. Hunter, who was employed by Neuroscience & Spine Center of the Carolinas, P.A. and Neuroscience & Spine Center of the Carolinas, L.L.P., after an MRI scan revealed diffuse degenerative disease in Mr. Brewer's lumbar area and severe canal stenosis. On 19 March 2008, Dr. Hunter diagnosed Mr.

Brewer as suffering from severe spinal stenosis and recommended a thoracic laminectomy. Mr. Brewer consented to the surgery, which was performed by Dr. Hunter on 10 April 2008.

Upon awakening from surgery, Mr. Brewer discovered that he was unable to move his lower extremities and had no sensation below his thighs. An MRI scan revealed that he had suffered a severe spinal cord infarction during surgery. Subsequent MRI scans revealed that Mr. Brewer continued to suffer from severe myelomalacia. To date, Mr. Brewer remains permanently confined to a wheelchair, continues to undergo physical therapy and rehabilitation, and requires assistance with daily tasks, including managing his bowel and bladder functions.

On 31 August 2012, Plaintiffs filed an amended complaint[1] in Gaston County Superior Court against Defendants, alleging medical negligence, loss of consortium, and negligent infliction of emotional distress. Plaintiffs subsequently served a set of written discovery requests on Defendants which sought, *inter alia*, "all documents . . . showing Dr. Hunter's complications and complication rate for thoracic laminectomies during 2005, 2006, 2007, and 2008 (up to and including April 10, 2008)" and "all documents . . . showing Dr. Hunter's case volume for thoracic laminectomies during 2005, 2006, 2007, and 2008 (up to

[1] Plaintiffs' original complaint is not contained in the record on appeal.

and including April 10, 2008)." In response, Defendants produced a copy of a letter from Gaston Memorial Hospital identifying 14 thoracic laminectomies performed by Dr. Hunter at the hospital between May of 2005 and October of 2011 (including the operation performed on Mr. Brewer) and stating that those surgeries "were performed with no issues noted[.]"

On 21 September 2012, Dr. Hunter was deposed. During his deposition, Dr. Hunter testified that he had personally created a list of 44 instances, including patient names and dates of surgery, in which he had performed thoracic laminectomies. Plaintiffs subsequently requested the production of this document, and a copy of the document – with the names of the patients redacted – was provided to Plaintiffs' counsel.

On 25 October 2012, Plaintiffs filed a second set of written discovery requests in which they sought, among other things, "the operative notes and discharge summaries for all surgeries performed by Dr. Hunter and as identified on the document created by Dr. Hunter prior to his deposition and attached as Exhibit A to this Request[.]" Plaintiffs attached to this request the redacted document that had been produced by Defendants following Dr. Hunter's deposition. After Defendants served objections to this request, Plaintiffs filed a motion to compel on 18 July 2013.

A hearing on Plaintiffs' motion took place on 29 July 2013. On 15 August 2013, the trial court entered an order granting Plaintiffs' motion in part, which contained the following findings of fact and conclusions of law:

> 1. Plaintiff sought production of 44 individual patient's operative notes and discharge summaries documenting surgical procedures they had with the Defendant.
>
> 2. Plaintiff argued that the operative notes and discharge summaries of the 44 individual patients were necessary to assess the credibility of the Defendant with regard to his testimony about the number of surgical procedures he had performed and the number of complications following those procedures he had encountered at the time he responded to questions at his deposition. Plaintiff also argued that the operative notes would demonstrate the operative technique utilized by Defendant.
>
> 3. The Court has considered the interests of the parties and the issues at stake in this litigation and carefully weighed these interests against the concern to protect the private health information of non-party patients. A balance between these competing interests is best obtained by compelling production of some of the requested documents, with appropriate redactions that would allow for the protection of the identity of the patients.
>
> 4. In the exercise of its discretion, this Court finds good cause exists for the Plaintiffs' Motion to Compel Discovery, and it is ALLOWED IN PART and DENIED IN PART.
>
> IT IS THEREFORE ORDERED, ADJDUGED [sic], and DECREED that:

1.   The   Defendants   shall   produce   the operative notes and discharge summaries for all procedures occurring from 2005 through October 15, 2011 as identified on Exhibit A to
Plaintiffs'   Motion   to   Compel   Discovery, including  the  following  dates  of  service: 5/10/05;  5/17/05;  5/23/05;  7/28/05;  9/8/05; 10/24/05;  3/9/06;  3/13/06;  7/15/06;  8/30/07; 9/17/07;  9/28/07;  1/18/08;  2/15/08;  7/10/08; 11/21/08;    11/24/08;    4/2/09;    10/5/10; 10/8/10;  3/4/11;  3/28/11;  5/13/11;  6/23/11; and 10/15/11.

2.   Plaintiff's  request  for  production  of operative notes and discharge summaries for procedures occurring prior to 2005 is DENIED and  the  procedures  identified  on  Exhibit  A to  Plaintiff's  Motion  to  Compel  Discovery prior  to  May  10,  2005,  shall  not  be  produced as  they  are  privileged  and  not  relevant  to this matter.

3.   Prior to production, the Defendants may redact any protected health information from the operative notes and discharge summaries.

4.   To    the    extent    that    there    is information,    other    than    identifying information,  contained  in  the  produced records  that  is  highly  sensitive,  or  may otherwise require redaction, Defense counsel may submit the operative note and discharge summary  to  this  Court  for  in  camera inspection.  The  Court  will  review  and consider any proposed redactions.

5.   The  Defendants  shall  produce  these operative  notes  and  discharge  summaries within  a  reasonable  time  not  to  exceed  45 days from entry of this order.

6.   Because   the   records   being   produced pursuant  to  this  Order  are  subject  to  the protections    of    the    Health-Insurance

Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. 164.500, *et seq.*, N.C. Gen. Stat. § 131E-97, and N.C. Gen. Stat. § 8-53, the production of these records affects a substantial right and there is no just reason to delay appeal.

Defendants filed a timely notice of appeal to this Court.

## Analysis

Defendants contend that the trial court erred by granting in part Plaintiffs' motion to compel. We disagree.

## I. Jurisdiction

As an initial matter, we must determine whether we have jurisdiction over this appeal. "An order compelling discovery is generally not immediately appealable because it is interlocutory and does not affect a substantial right that would be lost if the ruling were not reviewed before final judgment." *Sharpe v. Worland*, 351 N.C. 159, 163, 522 S.E.2d 577, 579 (1999). However, where a party asserts a privilege or immunity that directly relates to the matter to be disclosed pursuant to the interlocutory discovery order and the assertion of the privilege or immunity is not frivolous or insubstantial, the challenged order affects a substantial right and is thus immediately appealable. *K2 Asia Ventures v. Trota*, 215 N.C. App. 443, 446, 717 S.E.2d 1, 4, *disc. review denied*, 365 N.C. 369, 719 S.E.2d 37 (2011).

In the present case, Defendants argue that the documents at issue are immune from discovery based on the privilege set out in N.C. Gen. Stat. § 8-53, which governs the discoverability of a patient's medical records. Our Supreme Court has held that "when . . . a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial right[.]" *Sharpe*, 351 N.C. at 166, 522 S.E.2d at 581. Accordingly, we possess jurisdiction over this appeal.

## II. Application of N.C. Gen. Stat. § 8-53

N.C. Gen. Stat. § 8-53 states as follows:

> No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132-1. Confidential information obtained in medical records shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin. *Any* resident or presiding *judge* in the district, either at the trial or prior thereto, or the Industrial Commission

> pursuant to law *may*, subject to G.S. 8-53.6,[2] *compel disclosure if in his opinion disclosure is necessary to a proper administration of justice*. If the case is in district court the judge shall be a district court judge, and if the case is in superior court the judge shall be a superior court judge.

N.C. Gen. Stat. § 8-53 (2013) (emphasis added).

In the present case, Defendants contend that the production of non-party medical records should be compelled only in exceptional circumstances. However, the essence of their argument is grounded more in policy than in law. It is well established in North Carolina that policy decisions are solely within the province of the General Assembly. *See Richards v. N.C. Tax Review Bd.*, 183 N.C. App. 485, 487, 645 S.E.2d 196, 197 (2007) (holding that the role of policy maker has been entrusted by our Constitution to the General Assembly).

While the General Assembly could have drafted N.C. Gen. Stat. § 8-53 so as to impose greater restrictions on the disclosure of non-party medical records than those applicable to the disclosure of the medical records of parties to the litigation before the court, no such distinction has been drawn in this statute. Instead, N.C. Gen. Stat. § 8-53 leaves the discoverability of *all* patient records subject to the discretion

---

[2] N.C. Gen. Stat. § 8-53.6 concerns the privilege applicable to a marital counselor, psychologist, or social worker in alimony actions and is, therefore, not relevant to the present case.

of the trial courts of this State based upon whether the court believes the disclosure of records is "necessary to a proper administration of justice." N.C. Gen. Stat. § 8-53.

This Court lacks the authority to judicially create – as Defendants invite us to do – a new standard applicable to the production of medical records where the General Assembly has enacted a statute addressing the issue. *See State v. Sims*, 216 N.C. App. 168, 173, 720 S.E.2d 398, 401 (2011) (holding that where the General Assembly "requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction").

Therefore, the only question before us is whether, on the facts of the present case, the trial court abused its discretion in determining that the disclosure of various records of certain former patients of Dr. Hunter was "necessary to a proper administration of justice." Our prior case law applying N.C. Gen. Stat. § 8-53 makes clear that a trial court's ruling pursuant to this statute is reviewed under an abuse of discretion standard. For example, in *Roadway Exp., Inc. v. Hayes*, 178 N.C. App. 165, 631 S.E.2d 41 (2006), the plaintiff sought discovery concerning the issue of whether the defendant

had been taking any prescription medications and had consumed alcohol at the time of a motor vehicle accident. *Id.* at 168, 631 S.E.2d at 44. The trial court ordered the defendant to produce his medical records under seal for an *in camera* review, limiting the scope of production to "only those medical records that mention or reflect the results of any tests performed to determine Defendant's blood alcohol content and the presence of controlled substances in his body." *Id.* at 170, 631 S.E.2d at 45-46. Following the *in camera* review, the trial court ordered that the records be produced to the plaintiff. *Id.* at 167, 631 S.E.2d at 44.

On appeal, we held — based on N.C. Gen. Stat. § 8-53 — that "[t]he physician-patient privilege is not an absolute privilege, and it is in the trial court's discretion to compel the production of evidence that may be protected by the privilege if the evidence is needed for a proper administration of justice." *Id.* at 170, 631 S.E.2d at 45. We further emphasized that "[t]he decision that disclosure is necessary to a proper administration of justice is one made in the discretion of the trial judge, and the defendant must show an abuse of discretion in order to successfully challenge the ruling." *Id.* at 171, 631 S.E.2d at 46 (citations and quotations omitted).

In *State v. Drdak*, 330 N.C. 587, 411 S.E.2d 604 (1992), the State sought to compel the release of medical records concerning the defendant's blood alcohol content following a motor vehicle accident. *Id*. at 591, 411 S.E.2d at 607. Citing N.C. Gen. Stat. § 8-53, our Supreme Court affirmed the trial court's order compelling the disclosure of the requested records, holding that a court's ruling pursuant to this statute may only be overturned on appeal upon a showing of abuse of discretion. *Id*. at 591-92, 411 S.E.2d at 607.[3]

"Under the abuse-of-discretion standard, we review to determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d 160, 161 (2002). In the present case, after a hearing in which it carefully considered the arguments of counsel and reviewed the documents submitted by the parties, the trial court summarized the basis for its holding as follows:

> My conclusion is that the request of records are [sic] relevant from the standpoint of credibility, experience, and technique used. That the records that I'm going to encompass

---

[3] Defendants cite to several cases from other jurisdictions in which courts have refused to require the production of non-party medical records in discovery. However, unlike North Carolina, none of those jurisdictions confer upon their trial courts the discretion to determine the discoverability of such records.

by this order are necessary for the administration of justice.

The court then entered an order reflecting the fact that it had carefully balanced the respective interests implicated by Plaintiffs' motion:

> The Court has considered the interests of the parties and the issues at stake in this litigation and carefully weighed these interests against the concern to protect the private health information of non-party patients. A balance between these competing interests is best obtained by compelling production of some of the requested documents, with appropriate redactions that would allow for the protection of the identity of the patients.

The careful consideration given to this issue by the trial court was evidenced by its decision to (1) require the production of only 25 of the 44 patient records requested; (2) provide for the redaction of information that could reveal the identity of the patients whose records were being produced; and (3) recognize the potential need of the parties to obtain an *in camera* inspection of any portions of the records to be produced containing other personal or sensitive information that could potentially require redaction.

Based on the facts of this case, we cannot say that the trial court's ruling was "manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Mark Grp. Int'l, Inc.*, 151 N.C. App. at

566, 566 S.E.2d at 161. Therefore, we hold that the trial court did not abuse its discretion in granting in part Plaintiffs' motion to compel.

## Conclusion

For the reasons set out above, the trial court's 15 August 2013 order is affirmed.

AFFIRMED.

Judges HUNTER, JR. and ERVIN concur.