NO. COA14-390

 NORTH CAROLINA COURT OF APPEALS

 Filed: 4 November 2014

STATE OF NORTH CAROLINA

 v. Buncombe County
 No. 11 CRS 63608
MATTHEW SMITH SHEPLEY

 Appeal by defendant from judgment entered 9 September 2013

by Judge James U. Downs in Buncombe County Superior Court. Heard

in the Court of Appeals 11 September 2014.

 Attorney General Roy Cooper by Assistant Attorney General
 Joseph L. Hyde for the State.

 Wait Law, P.L.L.C., by John L. Wait, for defendant-
 appellant.

 STEELMAN, Judge.

 The law enforcement officer’s stop of defendant was

justified by reasonable suspicion. Where the officer obtained a

blood sample from defendant pursuant to a warrant, after

defendant refused to submit to a breath test of his blood

alcohol level, the results were admissible under N.C. Gen. Stat.

§ 20-139.1(a). The procedures for obtaining the blood sample did

not have to comply with the requirements of N.C. Gen. Stat. §
 -2-
20-16.2, and defendant did not have a right to have a witness

present. Because defendant pled guilty, he did not have a right

to appeal the denial of his motions to dismiss the charges.

 I. Factual and Procedural Background

 Just before midnight on 22 November 2011, Deputy Dean

Hannah was on patrol in Buncombe County, North Carolina, and saw

Matthew Shepley (defendant) driving his moped on Smokey Park

Highway. Defendant was wearing a bicycle helmet instead of a DOT

approved helmet, and his moped did not have a taillight. After

observing the helmet and the absence of a taillight, Officer

Hannah illuminated his blue lights to initiate a traffic stop.

Defendant initially sped up but stopped after traveling about

220 yards. When Officer Hannah approached defendant, he

“immediately smelled a strong odor of alcoholic beverage on his

breath.”

 Based on his observations during the stop, Officer Hannah

arrested defendant for driving while impaired and failing to

wear a DOT approved helmet, and took him to the Buncombe County

Detention Center. Defendant requested that a witness be present

to observe the breath testing procedures. When the witness

arrived, defendant refused to give a breath sample. The law

enforcement officer escorted the witness out of the room,

obtained a search warrant, and a blood sample was drawn from
 -3-
defendant outside the presence of the witness. The blood sample

was sent to the State Bureau of Investigation where, after a

substantial delay, it was determined that defendant had a .14

blood alcohol level.

 On 14 May 2013 defendant was convicted in district court of

driving while impaired and appealed to superior court. On 6 June

2013, defendant filed a motion to suppress the evidence against

him, asserting that Deputy Hannah’s stop of defendant violated

his rights under the 4th Amendment because the stop was not

supported by reasonable suspicion of criminal activity.

Defendant also filed a motion to dismiss the charge based upon

an alleged deprivation of his U.S. constitutional right to a

speedy trial. On 8 July 2013 defendant filed a motion to

suppress the results of the blood test and dismiss the charge

against him because his witness had not been allowed to observe

the drawing of his blood pursuant to the search warrant. The

trial court denied defendant’s motions in orders entered 12 July

2013. On 5 August 2013 defendant filed a motion asking the trial

court to reconsider its ruling on the issue of whether Deputy

Hannah’s stop of defendant was supported by reasonable

suspicion. The motion was based upon the assertion that at the

original hearing on defendant’s suppression motion Deputy Hannah

testified that he had taken defendant’s helmet into evidence,
 -4-
but after the hearing Deputy Hannah determined that he had not

confiscated the helmet. Following a hearing, the trial court

orally denied defendant’s motion. After defendant’s motions were

denied, he filed written notice of his intent to appeal the

denial of his motions to suppress and dismiss.

 On 9 September 2013 defendant pled guilty to driving while

impaired, and reserved his right to appeal the denial of his

suppression motions. The trial court imposed level two

punishment, sentenced defendant to a term of twelve months,

suspended the sentence, and placed him on probation for 18

months.

 Defendant appeals.

 II. Legal Analysis

 A. Scope of Review

 On appeal defendant argues that the trial court erred by

denying his suppression motion and his motions to dismiss the

charge against him. “‘In North Carolina, a defendant’s right to

appeal in a criminal proceeding is purely a creation of state

statute.’ A defendant who pleads guilty has a right of appeal

limited to the following: . . . Whether the trial court

improperly denied defendant’s motion to suppress. N.C. Gen.

Stat. §§ 15A-979(b)[(2013)], 15A-1444(e) [(2013)][.]” State v.

Jamerson, 161 N.C. App. 527, 528-29, 588 S.E.2d 545, 546-47
 -5-
(2003) (quoting State v. Pimental, 153 N.C. App. 69, 72, 568

S.E.2d 867, 869 (2002)). “Here, upon defendant’s guilty plea,

defendant has a right to appeal only the trial court’s denial of

his motion to suppress. . . . Defendant does not have a right to

appeal the trial court’s denial of his motion to dismiss[.]”

State v. Smith, 193 N.C. App. 739, 742, 668 S.E.2d 612, 614

(2008). Therefore, we do not address defendant’s arguments

pertaining to the denial of his motions to dismiss.

 B. Suppression Motion

 1. Right to Witness at Blood Drawing

 In his first argument, defendant contends that the trial

court erred by denying his motion to suppress the results of the

blood test because he “was denied his statutory and

constitutional right to have a witness present for the blood

draw.” We disagree.

 N.C. Gen. Stat. § 20-16.2 provides in relevant part that:

 (a) Any person who drives a vehicle on a
 highway or public vehicular area thereby
 gives consent to a chemical analysis if
 charged with an implied-consent offense. .
 . . Before any type of chemical analysis is
 administered the person charged shall be
 taken before a chemical analyst . . . or a
 law enforcement officer . . . who shall
 inform the person orally and also give the
 person a notice in writing that:

 . . .
 -6-
 (6) You may call an attorney for advice and
 select a witness to view the testing
 procedures remaining after the witness
 arrives[.]. . .

 (a1) Under this section, an “implied-
 consent offense” is an offense involving
 impaired driving, a violation of G.S. 20-
 141.4(a2), or an alcohol-related offense[.]
 . . .

 . . .

 (c) A law enforcement officer or chemical
 analyst shall designate the type of test or
 tests to be given and may request the
 person charged to submit to the type of
 chemical analysis designated. If the person
 charged willfully refuses to submit to that
 chemical analysis, none may be given under
 the provisions of this section, but the
 refusal does not preclude testing under
 other applicable procedures of law.

 “During the administration of a breathalyzer test, the

person being tested has the right to ‘call an attorney and

select a witness to view for him the testing procedures.’ This

statutory right may be waived by the defendant, but absent

waiver, denial of this right requires suppression of the results

of the breathalyzer test.” State v. Myers 118 N.C. App. 452,

454, 455 S.E.2d 492, 493 (1995) (quoting N.C. Gen. Stat. §

N.C.G.S. § 20-16.2(a)(6), and citing McDaniel v. Division of

Motor Vehicles, 96 N.C. App. 495, 497, 386 S.E.2d 73, 75 (1989),

and State v. Shadding, 17 N.C. App. 279, 283, 194 S.E.2d 55, 57

(1973) (other citation omitted). However, as stated above, if a
 -7-
defendant refuses to submit to the test designated by the law

enforcement officer, no blood alcohol tests “may be given under

the provisions of this section, but the refusal does not

preclude testing under other applicable procedures of law.” The

plain language of the statute limits its application to

situations in which a defendant consents to take a breathalyzer

or other test designated by the officer.

 N.C. Gen. Stat. § 20-139.1(a) addresses the admissibility

of chemical analyses of blood alcohol other than those performed

pursuant to N.C. Gen. Stat. § 20-16.2, and provides in relevant

part that “[i]n any implied-consent offense under G.S. 20-16.2,

a person’s alcohol concentration . . . as shown by a chemical

analysis is admissible in evidence. This section does not limit

the introduction of other competent evidence as to a person’s

alcohol concentration or results of other tests showing the

presence of an impairing substance, including other chemical

tests.”

 The relationship between N.C. Gen. Stat. § 20-16.2 and N.C.

Gen. Stat. § 20-139.1 has been addressed in several cases. In

State v. Drdak, 101 N.C. App. 659, 400 S.E.2d 773 (1991), the

defendant was injured in a motor vehicle accident and taken to

the hospital, where his blood was tested for alcohol without

first informing him of his right to consent or refuse the blood
 -8-
test or of his rights under N.C. Gen. Stat. § 20-16.2. On appeal

we held that the results of the blood test were inadmissible,

because the blood test was not performed in accordance with N.C.

Gen. Stat. § 20-16.2. The North Carolina Supreme Court reversed:

 The Court of Appeals held that the trial
 judge erred in denying defendant’s motion
 to suppress because the blood test was not
 performed according to the procedure
 authorized under N.C.G.S. §§ 20-16.2 and
 20-139.1. This contention of the defendant
 flies squarely in the face of the plain
 reading of the statute, N.C.G.S. § 20-
 139.1(a), which states: “This section does
 not limit the introduction of other
 competent evidence as to a defendant’s
 alcohol concentration, including other
 chemical tests.” This statute allows other
 competent evidence of a defendant’s blood
 alcohol level in addition to that obtained
 from chemical analysis pursuant to N.C.G.S.
 §§ 20-16.2 and 20-139.1. . . . [I]t is the
 holding of this Court that the obtaining of
 the blood alcohol test results in this case
 was not controlled by N.C.G.S. § 20-16.2(a)
 and did not have to comply with that
 statute because the test in question is
 “other competent evidence” as allowed by
 N.C.G.S. § 20-139.1.

State v. Drdak, 330 N.C. 587, 592-93, 411 S.E.2d 604, 607-08

(1992) (emphasis added). We hold that the argument advanced by

defendant in the instant case has been rejected by our Supreme

Court. Similarly, in State v. Davis, 142 N.C. App. 81, 542

S.E.2d 236 (2001), after the defendant refused to consent to a

breath test of his blood alcohol level, the law enforcement

officer obtained a search warrant and took urine and blood
 -9-
samples from the defendant. On appeal, we upheld the admission

of the results of these tests, citing Drdak:

 Here the defendant was given the
 opportunity to voluntarily submit to the
 testing. He refused, and the officer
 obtained a search warrant based on probable
 cause. We hold that testing pursuant to a
 search warrant is a type of “other
 competent evidence” referred to in N.C.G.S.
 § 20-139.1. In a similar case our Supreme
 Court . . . [held that] “it is not
 necessary for the admission of such ‘other
 competent evidence’ that it be obtained in
 accordance with N.C.G.S. § 20-16.2.”

Davis, 142 N.C. App. at 86, 542 S.E.2d at 239 (quoting Drdak).

Based on the language of N.C. Gen. Stat. § § 20-16.2 and 20-

139.1, as well as the Drdak and Davis opinions, we conclude that

after defendant refused a breath test of his blood alcohol

level, he was not entitled to have a witness present at the

blood test performed pursuant to a search warrant.

 In arguing for a contrary result, defendant asserts that

Davis is not controlling precedent because, although it held

that evidence introduced under N.C. Gen. Stat. § 20-139.1(a) did

not have to comply with the strictures of N.C. Gen. Stat. § 20-

16.2, it did not enumerate the specific provisions of the

statute. We disagree, given that its quote from Drdak, stating

that when evidence is admitted under N.C. Gen. Stat. § 20-

139.1(a) “‘it is not necessary for the admission of such ‘other

competent evidence’ that it be obtained in accordance with
 -10-
N.C.G.S. § 20-16.2’” would necessarily include the right to have

a witness present. Moreover, defendant does not acknowledge

Drdak, in which our Supreme Court expressly held that the

provisions of N.C. Gen. Stat. § 20-16.2 need not be followed if

evidence of a defendant’s blood alcohol is admitted under N.C.

Gen. Stat. § 20-139.1(a) as “other competent evidence.” We hold

that, because defendant’s blood was drawn pursuant to a search

warrant obtained after he refused a breath test of his blood

alcohol level, he did not have a right under N.C. Gen. Stat. §

20-16.2 to have a witness present.

 2. Constitutionality of Stop of Defendant

 In his second argument, defendant contends that the trial

court erred by denying his motion to suppress because Deputy

Hannah “did not have legal grounds to initiate” a traffic stop

of defendant. We do not agree.

 “The Fourth Amendment protects individuals ‘against

unreasonable searches and seizures.’ U.S. Const. amend. IV.

Traffic stops are permitted under the Fourth Amendment if the

officer has ‘reasonable suspicion’ to believe that a traffic law

has been broken.’” State v. Hopper, 205 N.C. App. 175, 177, 695

S.E.2d 801, 803 (2010) (quoting State v. Styles, 362 N.C. 412,

415, 665 S.E.2d 438, 440 (2008) (internal quotation omitted).

Reasonable suspicion exists if “[t]he stop . . . [is] based on
 -11-
specific and articulable facts, as well as the rational

inferences from those facts, as viewed through the eyes of a

reasonable, cautious officer, guided by [the officer’s]

experience and training.” State v. Watkins, 337 N.C. 437, 441,

446 S.E.2d 67, 70 (1994) (citation omitted). Reasonable

suspicion requires a “minimal level of objective justification,

something more than an ‘unparticularized suspicion or hunch[.]’”

State v. Steen, 352 N.C. 227, 239, 536 S.E.2d 1, 8 (2000)

(quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct.

1581, 104 L. Ed. 2d 1, 10 (1989).

 N.C. Gen. Stat. § 20-140.4(a)(2) provides in relevant part

that “[n]o person shall operate a . . . moped upon a highway . .

. [u]nless the operator and all passengers thereon wear on their

heads, with a retention strap properly secured, safety helmets

of a type that [comply] with Federal Motor Vehicle Safety

Standard (FMVSS) 218.” Violation of this statute is an

infraction. N.C. Gen. Stat. § 20-140.4(c). Deputy Hannah

testified that he observed defendant operating his moped without

wearing a proper helmet. This observation clearly provided the

officer with a reasonable suspicion that defendant had committed

an infraction. Under N.C. Gen. Stat. § 15A-1113(b), a “law

enforcement officer who has probable cause to believe a person

has committed an infraction may detain the person for a
 -12-
reasonable period in order to issue and serve him a citation.”

Deputy Hannah’s stop of defendant was supported by reasonable

suspicion, and the trial court did not err by denying

defendant’s motion to suppress evidence.

 Defendant concedes that Deputy Hannah testified to seeing

defendant operating his moped with an improper helmet, but

argues that because the officer could not confirm “whether or

not the helmet was DOT approved until after he approached”

defendant, the officer’s belief that defendant’s helmet was

improper “cannot support reasonable suspicion[.]” However, our

Supreme Court has held that “reasonable suspicion is the

necessary standard for traffic stops, regardless of whether the

traffic violation was readily observed or merely suspected.”

Styles, 362 N.C. at 415, 665 S.E.2d at 440. As a result, we are

not persuaded by defendant’s argument.

 For the reasons discussed above, we conclude that the trial

court did not err in denying defendant’s motion to suppress and

that its order should be

 AFFIRMED.

 Judges GEER and DIETZ concur.