HUNTER, JR., ROBERT N., Judge.
Jose Diaz ("Plaintiff") fell from a ladder at his place of employment on 27 December 2014, resulting in numerous injuries. The Industrial Commission denied Plaintiff compensation, concluding he was intoxicated at the time of the accident. We affirm the Commission's Opinion and Award.
I. Factual and Procedural Background
On 12 February 2013, Plaintiff filed a Form 18 (Notice of Accident to Employer and Claim of Employee, Representative, or Dependent). On 26 February 2013, Plaintiff filed a Form 33 (Request that Claim be Assigned for Hearing), alleging a compensable brain injury, broken bones, kidney injuries, and inability to eat and swallow. In response, Defendant Spanish Contractors filed a Form 61 on 12 March 2013, denying Plaintiff was an employee on the date of the injury. In the alternative, they denied liability as an employer. On 15 July 2015, Plaintiff filed an amended Form 18, adding Manuel Garcia Ramirez as a defendant. Plaintiff also filed an amended Form 33 on 5 November 2013 to reflect the addition of Ramirez as a defendant.
On 17 December 2013, Deputy Commissioner Adrian Phillips heard Plaintiff's case. The parties stipulated that Ramirez was Plaintiff's employer, and was acting as a subcontractor to Spanish Contractors on the date Plaintiff was injured. Deputy Commissioner Phillips issued an opinion and award on 20 June 2014, concluding an employer-employee relationship existed between Plaintiff and Defendant-Employers Ramirez and Spanish Contractors. The opinion and award found and concluded that Plaintiff's blood alcohol level at the time of the accident rendered him intoxicated, that Plaintiff's intoxication was a proximate cause of Plaintiff's injury, and that he is not entitled to any benefits pursuant to the Worker's Compensation Act. Plaintiff gave proper Notice of Appeal to the Full Commission on 3 July 2014.
On 9 February 2015, the Full Commission issued an Opinion and Award affirming the Deputy Commissioner's decision. The Full Commission found the following facts which are unchallenged and therefore binding on appeal.
Defendant Ramirez is a subcontractor for Defendant Spanish Contractors. Plaintiff, who was twenty-three years old at the time of his injury, was employed by Defendant Ramirez as a framer, building the wood framing for walls at construction sites. On 27 December 2014, Plaintiff was installing framing on a second story residential work site. To do so, Plaintiff climbed a 20 to 25 foot ladder to reach his work area. At approximately 5:15 p.m., Plaintiff fell from his ladder, hitting the concrete pad below. There were no witnesses.
Ruben Guerrero-Ibarra, a co-worker, discovered Plaintiff soon after his fall. A neighbor called 911. Guerrero thought Plaintiff fell because something broke, noting a broken two-by-four near Plaintiff's ladder. Guerrero testified that he did not see Plaintiff consume alcohol that day.
Officer Huffman, a police officer with the Charlotte-Mecklenburg Police Department, was one of the first emergency responders to the scene. He did not notice any alcoholic beverages at the scene of the accident, but other officers saw discarded alcoholic beverage containers at the jobsite. Officer Huffman accompanied Plaintiff to Carolinas Medical Center, where Plaintiff's physician noted the smell of alcohol. Plaintiff denied consuming alcohol that day as well as on weekdays generally, but admitted to drinking twelve to twenty-four beers on Sundays, when he did not work.
A nurse took a blood sample from Plaintiff at Carolinas Medical Center at 6:20 p.m.. Charlotte Pathological Group analyzed the sample. To analyze the sample, the blood sample is transported from the emergency room to a laboratory where an immunoassay test is conducted to determine the blood alcohol level of the patient. The equipment used to conduct the test was calibrated on the same day the laboratory tested Plaintiff's blood.
Dr. Susan Maynard, Ph.D., is the Director of Chemistry and Toxicology for the Charlotte Pathology Group. She has more than thirty years' experience analyzing toxicological substances and holds degrees in pharmacy, biopharmaceutics, and biochemistry. [Dr. Maynard was tendered as an expert witness in analytical toxicology and biochemistry without objection. She testified that Charlotte Pathology Group is lab certified by the College of American Pathology, and the testing done on Plaintiff's blood conformed to standards generally accepted in the medical community. She testified Plaintiff's blood alcohol concentration at the time of the test was "very close to .045." She believed that result to be accurate and reliable to a reasonable degree of certainty. Dr. Maynard was familiar with a process known as retrograde extrapolation, a process which calculates the blood alcohol concentration of a person at a point in the past. She believed retrograde extrapolation would be appropriate in this case.
Dr. Andrew Mason, Ph.D., is a forensic toxicologist with a B.S. in Chemistry and a Ph.D. in medicinal chemistry. He was previously the chief toxicologist for the State of North Carolina and is the founder and owner of Toxico Logics, Ltd.. Dr. Mason, a certified forensic toxicologist by the American Board of Forensic Toxicology, was tendered as an expert in forensic toxicology. After reviewing reports from Charlotte Pathology Group, he confirmed the blood test followed standard procedure in the industry and the equipment used was accurate. He also believed retrograde extrapolation to be a reliable scientific method and appropriate in this case.
Based on his evaluation of the blood test, Dr. Mason believed Plaintiff's blood alcohol level to be between .045 and .083 at the time of the accident, with the median value being .065. His calculations showed an 88.9% likelihood that Plaintiff had a blood alcohol concentration of .050 or greater at the time of the accident. Dr. Mason testified that there is a "scientific consensus" that most people display "significant impairment" at a blood alcohol level of 0.050. At 0.050, a person may have signs of increased risk taking, divided attention, alteration of balance, slower reaction times, slower information processing, and diminution in depth perception. Based on the blood test, he opined Plaintiff was both physically and mentally impaired at the time of injury. At Plaintiff's level of intoxication, a person would experience alterations to their emotional state, cognitive processes, coordination, and perceptual capabilities. Dr. Mason testified, to a reasonable degree of scientific certainty as a toxicologist, that Plaintiff's alcohol impairment was a causal factor in Plaintiff's injuries unless an independent cause exists. Concerning Plaintiff's admission of drinking twelve to twenty-four beers on Sundays, Dr. Mason testified that sort of binge drinking was consistent with alcoholism and believed it to be "highly unlikely" that Plaintiff refrained from drinking alcohol during the week. "To consume that amount of alcohol without significant toxicity, would require a rather severe degree of accommodation from a metabolic standpoint. That would indicate a significant degree of biological or functional adaptation to the effects of alcohol. Here again, that takes time. That takes chronic exposure to develop."
Dr. Ruth Winecker, Ph.D., a forensic toxicologist, is the chief toxicologist for the medical examiner's office of the State of North Carolina. She holds a B.S. in biology with a minor in chemistry and a Ph.D. in clinical chemistry and toxicology. Board-certified in forensic toxicology by the American Board of Forensic Toxicologists, she has worked in a toxicology lab since 1992. She was tendered as an expert in the field of forensic toxicology. Dr. Winecker also confirmed the blood test conducted by Charlotte Pathology Group is generally accepted in the scientific community as being accurate to determine a person's blood alcohol level. She also agreed retrograde extrapolation is "a common method of estimating an individual's blood alcohol level and is a generally accepted scientific method of determining a person's blood alcohol level." To a reasonable degree of certainty, Dr. Winecker estimated Plaintiff's blood alcohol level was between .047 and .073 at the time of the accident. She believed a person with a blood alcohol level in that range would be "under the influence of alcohol." She testified Plaintiff was more likely than not to have been under the influence of alcohol at the time of his injuries.
Dr. Michael Beuhler, the medical director of the Carolinas Poison Center, was tendered as an expert in medical toxicology. He was called to testify on the possibility of false positives in the immunoassay blood test. Dr. Beuhler explained the test is accurate if there are no interferences. The three most common interferences are LDH, lactic acid, and alcohols from the withdrawal site. However, he admitted there is no way of knowing whether those interferences existed in this case. He calculated Plaintiff's blood alcohol level at the time the sample was taken to be .042, which he said would be a "very small, slight effect, if any at all" on Plaintiff's cognitive and motor functions. Dr. Beuhler did not believe the process of retrograde extrapolation was appropriate in this case because he did not think Plaintiff was a normal member of the population at the time the blood sample was taken. Plaintiff's metabolism or alcohol elimination rates may not have been consistent with the average healthy adult due to his injuries.
The Full Commission found as fact that the testimony of Drs. Winecker and Mason should be afforded more weight than the testimony of Dr. Buehler. Based on expert testimonies, the Full Commission found the following which Plaintiff has not challenged on appeal:
31. Based upon the results of the immunoassay testing, the Full Commission finds as fact that Plaintiff's blood alcohol level at the time his blood sample was taken was at least 0.045.
...
33. Based upon the expert testimony of Drs. Winecker and Mason, the Full Commission finds as fact that there was an 88.9 percent probability that Plaintiff's blood alcohol level at the time of his accident was at least 0.050, or higher. The Full Commission further finds that Plaintiff's blood alcohol level at the time of his accident was within a range of 0.045 to 0.083 or a range of 0.047 to 0.073.
34. The Full Commission finds as fact, based upon the preponderance of the evidence, that Plaintiff was intoxicated by alcohol at the time of his accident, that he was impaired due to his intoxication, and that he was impaired to such a degree that he lost normal control of his bodily and mental faculties due to alcohol consumption. The Full Commission further finds as fact that Plaintiff's impairment was a proximate cause of his accident.
The Full Commission concluded Defendants established a rebuttable presumption of impairment, and Plaintiff failed to rebut that presumption. Plaintiff's intoxication was "more likely than not, a causal factor in his accident." As a result, the Full Commission denied Plaintiff's claim for compensation. The Commission also concluded Ramirez neglected or refused to insure his liability for a period of 1 day, and should be punished by a penalty of $50.00. Plaintiff then filed a notice of appeal of the opinion and award of the Full Commission to this Court on 9 March 2015.
II. Jurisdiction
This Court has jurisdiction over appeals from the Industrial Commission pursuant to N.C. Gen.Stat. § 7A-29(a) and N.C. Gen.Stat. § 97-86.
III. Standard of Review
We review an appeal from the Commission to determine whether the findings of fact are supported by competent evidence, and whether the findings of fact support the conclusions of law. Hassell v. Onslow County Bd. of Educ., 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008). The Industrial Commission "is the sole judge of the credibility of the witnesses and the weight of the evidence." Id . Therefore, "[t]he Commission's findings of fact are conclusive on appeal if supported by competent evidence 'notwithstanding evidence that might support a contrary finding.' " Reaves v. Indus. Pump Serv., 195 N.C.App. 31, 34, 671 S.E.2d 14, 17 (2009) (quoting Hobbs v. Clean Control Corp., 154 N.C.App. 433, 435, 571, S.E.2d 860, 862 (2002)). Unchallenged findings of fact are binding on appeal. Allred v. Exceptional Landscapes, Inc., 227 N .C.App. 229, 232, 743 S.E.2d 48, 51 (2013). "The Commission's conclusions of law are reviewable de novo. " Id.
IV. Analysis
The Workers' Compensation Act provides an avenue for workers to seek compensation for personal injury or death resulting from an accident during the course of his or her employment. See N.C. Gen.Stat. § 97-3 (2015). Intoxication is a defense which may be asserted by the employer. Anderson v. Century Data Sys., Inc., 71 N.C.App. 540, 545, 322 S.E.2d 638, 641 (1984). The employer has the burden of proof to prove intoxication pursuant to the following statute. Id.
No compensation shall be payable if the injury or death to the employee was proximately caused by:
(1) His intoxication, provided the intoxicant was not supplied by the employer or his agent in a supervisory capacity to the employee; or
(2) His being under the influence of any controlled substance listed in the North Carolina Controlled Substances Act, G.S. 90-86, et seq., where such controlled substance was not by prescription by a practitioner; or
(3) His willful intention to injure or kill himself or another.
...
"Intoxication" and "under the influence" shall mean that the employee shall have consumed a sufficient quantity of intoxicating beverage or controlled substance to cause the employee to lose the normal control of his or her bodily or mental faculties, or both, to such an extent that there was an appreciable impairment of either or both of these faculties at the time of the injury.
A result consistent with "intoxication" or "being under the influence" from a blood or other medical test conducted in a manner generally acceptable to the scientific community and consistent with applicable State and federal law, if any, shall create a rebuttable presumption of impairment from the use of alcohol or a controlled substance.
N.C. Gen.Stat. § 97-12 (2015). By enacting N.C. Gen.Stat. § 97-12, the General Assembly intended "to relieve an employer of the obligation to pay compensation to an employee when the accident giving rise to the employee's injuries is proximately caused by his intoxication." Gratz v. Hill, 189 N.C.App. 489, 493, 658 S.E.2d 523, 525 (2008) (quoting Anderson, 71 N.C.App. at 547, 322 S.E.2d at 642 ).
Proximate cause is defined as follows:
(1) in a natural and continuous sequence and unbroken by any new and independent cause produces an injury, (2) without which the injury would not have occurred, and (3) from which a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed.
Tharp v. Southern Gables, Inc., 125 N.C.App. 364, 368, 481 S.E.2d 339, 342 (1997) (quoting Goode v. Harrison, 45 N.C.App. 547, 548, 549, 263 S.E.2d 33, 34 (1980) ). Our case law has interpreted proximate cause in previous worker's compensation cases asserting intoxication as a defense. "In asserting the defense of intoxication ... the employer is required to prove only that the employee's intoxication was more probably than not a cause in fact of the accident resulting in injury to the employee." Anderson, 71 N.C.App. at 545, 322 S.E.2d at 641 (citing Rorie v. Holly Farms, 306 N.C. 706, 295 S.E.2d 458 (1982) ). The employer is not required to disprove all other possible causes of injury or prove that intoxication was the sole cause of injury." Sidney for Sidney v. Raleigh Paving & Patching, 109 N.C.App. 254, 256, 426 S .E.2d 424, 426 (1993). The burden then shifts to Plaintiff to rebut the presumption. See Gratz, 189 N.C.App. at 493, 658 S.E.2d at 526.
Plaintiff argues Defendants did not meet their burden of proof under the statute. Plaintiff contends "applicable State and Federal law" requires Defendants to prove Plaintiff was intoxicated by having a blood alcohol level of .080 or greater, and that the Commission erred by finding Plaintiff intoxicated without a finding his blood alcohol level met or exceeded that threshold. Plaintiff argues the Commission also erred by concluding Plaintiff's intoxication, if any, proximately caused his injuries. Finally, Plaintiff claims the Commission erred by requiring Plaintiff to bear the burden of proof as to whether the employer provided Plaintiff with alcohol. We address each of Plaintiff's arguments in turn.
Plaintiff relies on N.C. Gen.Stat. § 20-138.1, which sets the legal standard at .080 "for intoxication sufficient to convict a person of impaired driving. " Gratz, 189 N.C.App. at 493, 658 S.E.2d at 526 (emphasis added). While a blood alcohol level of .080 would conclusively establish intoxication, the State is not required to establish a blood alcohol level of .080 to prove a defendant was driving while intoxicated. State v. Taylor, 165 N.C.App. 750, 757, 600 S.E.2d 483, 489 (2004) (citing State v. Sigmon, 74 N.C.App. 479, 482, 328 S.E.2d 843, 846 (1985) ). "[T]he State may prove DWI where the blood alcohol content is entirely unknown or less than 0.08." Id. (citing State v. Harrington, 78 N.C.App. 39, 46, 336 S.E.2d 852, 856 (1985) ). To establish intoxication without a blood test, the State may rely on opinion testimony as to whether a defendant was under the influence of alcohol. See Sigmon, 74 N.C.App. at 482, 328 S.E.2d at 846.
Defendants did not offer conclusive proof Plaintiff's blood alcohol level was .080 or higher at the time of the accident. However, the question is not whether Plaintiff had a blood alcohol level at or above .080, but instead whether Plaintiff was intoxicated at the time of the accident. Expert witnesses used retrograde extrapolation to place Plaintiff's blood alcohol level between .045 and .083 at the time of the accident according to Dr. Mason or between .047 and .073 at the time of the accident according to Dr. Winecker. Dr. Mason believed Plaintiff was intoxicated at the time of the accident because there was an 88.9% chance that Plaintiff had a blood alcohol level of .050 or greater and a "scientific consensus" supports "significant impairment" at that level. At that blood alcohol level, Dr. Mason testified, Plaintiff would have experienced alterations to his emotions, cognitive function, and coordination. Dr. Winecker agreed Plaintiff was more likely than not to have been under the influence of alcohol at the time of his accident.
The Full Commission found "Drs. Winecker and Mason should be afforded more weight than Dr. Beuhler." In addition, the Commission found the following facts which are unchallenged and therefore binding on appeal:
7. Both emergency medical responders and fire department responders noticed and noted the odor of alcohol on Plaintiff's person. Officer Huffman followed Plaintiff to Carolina[s] Medical Center (CMC), where medical personnel and the attending physician all discussed the smell of alcohol on Plaintiff's person.
8. Although Officer Huffman did not notice any discarded alcoholic beverages at the accident scene, he stated that Officer Ryerson, also of the Charlotte-Mecklenburg Police Department, did observe multiple discarded containers of alcoholic beverages at the jobsite.
...
34. The Full Commission finds as fact, based upon the preponderance of the evidence, that Plaintiff was intoxicated by alcohol at the time of the accident, that he was impaired due to his intoxication, and that he was impaired to such a degree that he lost normal control of his bodily and mental faculties due to alcohol consumption.
Based on the unchallenged findings of fact and expert testimony, the Commission's findings support its conclusion that Plaintiff was impaired at the time of the accident.
At that level of blood alcohol concentration, Plaintiff, according to expert witnesses, would have less control over balance and coordination. While working at a construction site on a ladder approximately 20 to 25 feet high, such a loss of balance and coordination would be amplified. Based on these circumstances, the intoxication was "more probably than not a cause in fact of the accident." See Anderson, 71 N.C.App. at 545, 322 S.E.2d at 641. As a result, we hold the evidence supports the Commission's findings and its conclusion that Plaintiff's intoxication was a proximate cause of the accident.
Plaintiff's final argument alleges the Commission incorrectly assigned the burden of proof to the Plaintiff to show his employer did not provide him with alcohol. Plaintiff is correct that the burden lies with Defendants to prove intoxication, "provided the intoxicant was not supplied by the employer or his agent in a supervisory capacity to the employee." N.C. Gen.Stat. § 97-12 (2015). The Commission found the following:
37. Plaintiff did not establish that his direct Employer, Manuel Garcia-Ramirez or Defendant-Employer, Spanish Contractors, were on the jobsite on the date of the accident. Plaintiff and other witnesses have testified that they did not consume any alcohol while working for Defendant-Employers, such that the Full Commission cannot find that Plaintiff's Employers provided alcohol to Plaintiff or failed to comply with any statutory requirement or lawful order of the North Carolina Industrial Commission. Thus, based upon a preponderance of the evidence, the Full Commission finds that Defendant-Employers, Manuel Garcia-Ramirez and Spanish Contractors, did not willfully fail to comply with any statutory requirement or lawful order of the North Carolina Industrial Commission.
Based on Plaintiff's testimony, there was never an issue whether the employer supplied Plaintiff alcohol. As the finding stated, the Commission "cannot find that Plaintiff's Employers provided alcohol to Plaintiff." We therefore affirm the Commission's decision.
V. Conclusion
For the foregoing reasons, we affirm the Commission's Opinion and Award.
AFFIRMED.
Judges STEPHENS and INMAN concur.
Report per Rule 30(e).